IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEREMY C.,[1]                                              No. 6:18-cv-01220-HZ

                        Plaintiff,                         OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.


Mark A. Manning
Katherine Eitenmiller
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

L. Jamala Edwards
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Jeremy C. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court reverses and remands the Commissioner's decision for further

administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on January 27, 2016, alleging an onset date of January

1, 2002. Tr. 190.[2] His application was denied initially and on reconsideration. Tr. 111-19, 126-

31.

      On January 8, 2018, Plaintiff appeared with his counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 33-54. On February 21, 2018, the ALJ found Plaintiff

not disabled. Tr. 10. The Appeals Council denied review. Tr. 1-4.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 7.

## FACTUAL BACKGROUND

Plaintiff initially alleged that his disability began on January 1, 2002.  Tr. 13.  After the hearing, he amended his disability onset date to August 1, 2016.  Tr. 218.  At the time of the hearing, Plaintiff was thirty-five years old.  Tr. 36.  He has a high school education and has past relevant work experience as a stage technician and a nurse assistant.  Tr. 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Disability claims are evaluated according to a five-step procedure.  *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).  The claimant bears the ultimate burden of proving disability.  *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.  *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

The ALJ found that Plaintiff last met the insured status requirements on September 30, 2018. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his amended alleged onset date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "anxiety disorder, methadone and opioid dependence and withdrawal, and benzodiazepine addiction." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16-18. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following non-exertional limitations:

> He can understand, remember, and carry out simple, routine, and repetitive instructions that can be learned in 30 days or less. He can have no public contact. He can have occasional direct co-worker contact with no group tasks (he has no limitation on incidental co[-]worker contact). He can have occasional supervisor contact. He can have no exposure to moving mechanical parts and unprotected heights hazards, as defined by the Dictionary of Occupational Titles (DOT). He is

limited to simple work[-]related decision making.  He can have occasional changes in work setting and work duties, with no conveyor belt paced work.

Tr. 18.  Because of those limitations, the ALJ concluded that Plaintiff could not perform his past relevant work.  Tr. 23-24.  But at step five, the ALJ found that Plaintiff can perform the following jobs that exist in significant numbers in the national economy: "industrial cleaner, agricultural produce packer, hand packager, fish cleaner, icer, tree planter, and cleaner II."  Tr. 24-25.  Thus, the ALJ concluded that Plaintiff is not disabled.  Tr. 25.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

///

///

///

**DISCUSSION**

Plaintiff alleges that the ALJ erred when she rejected Plaintiff's subjective symptom testimony, the opinion of Pamela Roman, Ph.D., and the lay witness testimony of Plaintiff's mother. The Court addresses each of the alleged errors below.

I.     **Plaintiff's Subjective Symptom Testimony**

The ALJ rejected Plaintiff's subjective symptom testimony for seven reasons. Some of the reasons that the ALJ rejected Plaintiff's testimony were not clear and convincing or supported by substantial evidence in the record. However, Plaintiff's drug seeking behavior is a specific, clear, and convincing reason to reject his testimony that is supported by substantial evidence in the record. That reason was sufficient for the ALJ to discount Plaintiff's subjective symptom testimony, and the ALJ's credibility determination must be upheld. *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The Commissioner uses a two-step analysis to determine the credibility of a claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). If the claimant produces evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged," and there is no evidence of malingering, then the ALJ must evaluate the intensity and persistence of their symptoms to determine the extent to which the claimant's symptoms limit their ability to perform work-related activities. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); SSR 16-3p, 2016 WL 1119029, at *4. To do so, the ALJ must compare the claimant's subjective complaints to the objective medical evidence in the record as a whole and must identify specific, clear, and convincing reasons supported by substantial evidence in the record to support its credibility analysis. *Lingenfelter*, 504 F.3d at 1036. The clear and convincing standard is the highest standard an ALJ is required to meet in Social

Security cases. *Garrison v. Colvin*, 759 F.3d 995, 101 (9th Cir. 2014). In determining a claimant's credibility, the ALJ may consider the objective medical evidence, the claimant's history of treatment, work activities, and activities of daily living. *Ghanim*, 763 F.3d at 1163. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ rejected Plaintiff's testimony for several reasons, including Plaintiff's inconsistent statements, her conclusion that his anxiety symptoms at work were caused by a hostile work environment, Plaintiff's drug-seeking behavior, failure to follow through with counseling and other treatment, normal mental status examinations, and the fact that Plaintiff was never psychiatrically hospitalized. Tr. 19-21. The ALJ did not find any evidence of malingering. As a result, she was required to identify specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036.

### A.      Inconsistent Statements

The ALJ's assessment of a claimant's subjective symptom testimony is designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," not to "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n. 5 (9th Cir. 2017) (citing S.S.R. 16-3p, 2016 WL 1119029, at *3).

The ALJ did not compare Plaintiff's reported symptoms to the symptoms documented in his medical records to determine if his reports of symptoms were consistent. Instead, the ALJ

compared his statements about whether he had used heroin in the past. Tr. 19. Whether Plaintiff made inconsistent statements about his past heroin use is irrelevant to the ALJ's evaluation of his subjective symptom testimony because she had already determined that Plaintiff's methadone and opioid dependence and withdrawal were severe impairments and that they caused more than minimal restrictions of his ability to perform work-related activities. Tr. 16. She also had found that Plaintiff's history of drug abuse was "significant, but not material," because he had been able to reach levels of substantial gainful activity at times despite his problems with drug abuse. Tr. 22. The ALJ's comments about Plaintiff's "discrepant statements" do not amount to an analysis of his symptoms, they analyze his truthfulness, which the ALJ used to "undermine the claimant's allegations regarding the intensity, persistency, and limiting effects of his anxiety and inability to leave the home." *Id.* In doing so, she failed to provide a clear and convincing reason supported by substantial evidence to reject his testimony.

## B.  Activities of Daily Living

An ALJ may consider a claimant's activities of daily living in making a credibility determination in two ways: (1) to illustrate inconsistency between the activities and the claimant's testimony; and (2) to show that a claimant's activities of daily living demonstrate transferable work skills that are inconsistent with disability. *Orn*, 495 F.3d at 639; *Fair*, 885 F.2d at 603. "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be

impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

The ALJ rejected Plaintiff's testimony in part because after his amended alleged onset date, Plaintiff was able to use public transportation, maintain his hygiene, do his laundry, shop, socialize with family, play guitar, draw, and manage his own money. The ALJ did not cite to the record or explain the basis for her conclusion that Plaintiff's ability to maintain his hygiene, do laundry, shop, socialize with family, play guitar, draw, and manage his own money were inconsistent with his testimony about the severity of his anxiety symptoms or demonstrated that he had transferable work skills. As a result, Plaintiff's ability, on some level, to perform those daily activities is not a clear and convincing reason to reject his subjective symptom testimony. *Orn*, 495 F.3d at 639 (mere fact that claimant can carry out certain minimal activities such as watching television, or coloring in coloring books does not detract from credibility as to overall disability or meet threshold for transferable work skills); *Molina*, 674 F.3d at 1112-13 (the claimant need not vegetate in a dark room to qualify for social security benefits).

Similarly, Plaintiff's ability, at times, to use public transportation was not a legitimate basis to reject his testimony. Plaintiff testified that he had difficulty using public transportation, not that he was entirely unable to use it, so his testimony was not inconsistent with his daily activities. Tr. 41. The record, as a whole, supports Plaintiff's testimony about his fear and difficulty using public transportation and reflects a more general problem of feeling anxious around other people that is entirely consistent with his testimony. *See* Tr. 464, 561, 565, 568, 570. The ALJ thus erred when she rejected Plaintiff's testimony about his difficulty using public transportation on the ground that he sometimes was able to use it. *Garrison*, 759 F.3d at 1016

("it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.").

### C. Objective Medical Evidence

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence because "the medical evidence of record does not contain objective findings that would reasonably support the degree of limitation the claimant alleges." Tr. 21. She noted that Plaintiff's medical records show that his mood improved with medication, he had ongoing anxiety and sleep disturbance, but showed that his mental status examinations generally were normal with some noted anxiety. *Id.* The ALJ also observed that Plaintiff has never been psychiatrically hospitalized. *Id.*

The record demonstrates many examples of objective evidence of Plaintiff's anxiety symptoms. Many of his treatment providers observed his symptoms of anxiety and witnessed him hyperventilate during periods of acute anxiety. Tr. 285, 290, 430, 462, 501, 509, 518, 529, 537 581, 586, 591, 621, 642, 645, 655, 676. Plaintiff's treating providers also observed that he had elevated blood pressure and a rapid heart rate on some occasions. Tr. 305, 509. In addition, Dr. Roman administered a Beck Anxiety Inventory, designed to determine the severity of an individual's anxiety, and Plaintiff received a score of 40, with scores over 26 noted to indicate severe anxiety. Tr. 571.

The Ninth Circuit has observed:

[T]he quest for "objective evidence" becomes more complicated and difficult in the context of mental disabilities. In the absence of the kinds of objective evidence more often present in the context of physical disabilities – test results, a history of medical procedures, or visual manifestations – the ALJ and the magistrate judge turned to [the claimant's] outward behavior, as presented at the hearing and documented in the examining physicians' reports, as a source of objective evidence of his condition. While there can be little question that outward behavior is a

legitimate source of such evidence, the difficulty is that mental illness may not necessarily be manifested outwardly at any particular time.

*Sorenson*, 69 F. App'x at 866.  The record demonstrates that Plaintiff struggled with symptoms of anxiety on an ongoing basis and that he often displayed outward manifestations of anxiety with episodes of crying and hyperventilating during visits with his mental health providers.  Tr. 529, 533, 570, 642-43.  The medical evidence in the record thus supports his testimony that he has those symptoms, and Plaintiff is not required to prove the degree of severity of his anxiety symptoms.  *Cf. Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) (the objective medical evidence does not need to fully corroborate the severity of pain a claimant alleges).  As a result, the ALJ erred in rejecting Plaintiff's testimony on the basis that it is inconsistent with objective medical evidence.  *Ghanim*, 763 F.3d at 1164 (the ALJ may not rely on "occasional signs of improvement" to reject a claimant's subjective symptom testimony when the record as a whole reflects long-standing symptoms of mental illness).

### D.    Failure to Follow Recommended Treatment

On the other hand, Plaintiff's failure to follow through with recommended therapy was a valid reason for the ALJ to reject Plaintiff's subjective symptom testimony.  The ALJ may properly consider whether Plaintiff followed through with the treatment prescribed by his providers when evaluating whether the intensity and persistence of Plaintiff's symptoms affect his ability to perform work-related activities.  S.S.R. 16-3p, *available at* 2017 WL 5180304, at *8.  Persistent attempts to obtain relief of symptoms "may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent," while an individual's failure to follow prescribed treatment that might improve their symptoms may be evidence that the symptoms are not intense or persistent if there is no reasonable basis for the individual not to follow through with recommended treatment.  *Id.*

Plaintiff explained that he failed to follow through with counseling because he had trouble remembering his appointments, Tr. 45, holding it together, *id.*, leaving the house and riding the bus, Tr. 41. However, Plaintiff later testified that he leaves his mother's house and rides the bus to the library or Starbucks to get out of the house. Tr. 46. As discussed above, the ALJ erred by rejecting Plaintiff's testimony that he had trouble using public transportation. The ALJ failed to address the other reasons that Plaintiff provided to explain his failure to follow through with recommended treatment. As a result, the ALJ's rejection of the reasonable explanations Plaintiff provided for not following recommended treatment were not clear and convincing. As a result, the ALJ erred in rejecting Plaintiff's subjective symptom testimony on that basis.

E.      **Work History**

The ALJ found that Plaintiff's claim that he is unable to work due to his symptoms was inconsistent with his ability to sustain work activity. She noted that "he testified that he quit working as a dishwasher due to anxiety from a hostile work environment, including his boss throwing a spatula at him," not due to excessive absenteeism due to his disability. Tr. 19. The ALJ mischaracterized Plaintiff's testimony. He testified that he stopped working as a dishwasher because he had "performance anxiety and I was just – my boss was – on one occasion like threw a spatula at me and they picked up on that anxiety thing, vomiting every morning before work, having to run and vomit in the bathroom because of feeling so nervous." Tr. 41. Although he mentioned the "one occasion" on which his boss threw a spatula at him, Plaintiff's testimony was that he vomited every morning before work due to his performance anxiety. *Id.* Accordingly, his testimony was not inconsistent with his claim that his unable to sustain work activity due to

the severity of his anxiety, and that was not a clear and convincing reason to reject his subjective symptom testimony.

## F.    Drug Seeking Behavior

The ALJ properly considered Plaintiff's drug-seeking behavior in analyzing the intensity, persistence, and limiting effects of his reported symptoms.  An ALJ may conclude that a claimant's report of subjective symptoms is inconsistent with the medical evidence in the record if the claimant engaged in drug-seeking behavior.  *Edlund v. Massanari*, 253 F.3d 1152, 1157-58 (9th Cir. 2001).  The record demonstrates that Plaintiff admitted that he abused the benzodiazepines his providers prescribed to treat his anxiety, Tr. 289, and he refused other medications his providers offered to manage his anxiety, Tr. 499.  Accordingly, the ALJ had a clear and convincing reason supported by substantial evidence in the record to find that the severity and intensity of Plaintiff's anxiety was less severe than he alleged.  *Massey v. Comm'r*, 400 F. App'x 194, 194 (9th Cir. 2010); *Voravong v. Berryhill*, No. 2:17-cv-00015-DWC, 2017 WL 2644843, at *4 (W.D. Wash. Jun. 20, 2017); *Dunn v. Colvin*, No. 6:14-cv-00266-HZ, 2015 WL 505265, at *8 (D. Or. Feb. 3, 2015).

## G.    Amended Onset Date

In addition to the other reasons, the ALJ also rejected Plaintiff's subjective symptom testimony because he amended his alleged onset date.  Tr. 20 ("inconsistencies between the claimant's amended alleged onset date, longitudinal medical records, and work history undermine his allegations regarding the intensity, persistency, and limiting effects of his symptoms and conditions.").  When determining the onset date of disability, the ALJ can consider the claimant's allegations, work history, medical and other evidence.  S.S.R. 83-20, *available at* 1983 WL 31249, at *3.  The ALJ should use the onset date alleged by the claimant if

it is consistent with the evidence in the record. *Id*. The medical evidence is "the primary element in the onset determination," and the date that the impairment caused the claimant to stop working "is frequently of great significance in selecting the proper onset date." *Id*. The ALJ must provide convincing rationale for the onset date selected. *Id*. A claimant may request to amend the onset date alleged in their application by sending a letter to the ALJ, completing form SSA-5002, or through their testimony at the hearing. *Id*. After the claimant files their application for benefits, it is within the ALJ's discretion whether to allow a claimant to amend their alleged onset date. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). An ALJ may discount a claimant's testimony if the alleged onset date of their disability bears no relation to their disabling impairment. *Nabis-Smith v. Berryhill*, No. 6:16-cv-01915-JR, 2018 WL 3404057, at * 5 (D. Or. Apr. 26, 2018), *adopted by* 2018 WL 3393247.

The ALJ allowed Plaintiff to amend his alleged onset date and then used it to discount his credibility in her decision. Plaintiff requested to amend his alleged onset date from 2002 to August 1, 2016, because he lost his job in July 2016. Tr. 218. As the ALJ recognized, Plaintiff's medical evidence documented that Plaintiff experienced worsening anxiety symptoms at that time. Tr. 20. She also acknowledged that Plaintiff stopped working at that time due to his anxiety and that he did not sustain employment after August 1, 2016, that reached a level of substantial gainful activity. *Id*. Nevertheless, the ALJ concluded that there was no basis or justification for Plaintiff to amend his alleged onset date. *Id*. Although she criticized Plaintiff for amending his alleged onset date, she did not make a determination of when his medically determinable severe impairments began. Plaintiff amended his alleged onset date, with the ALJ's permission, to conform to the worsening of his symptoms, medical evidence, and inability

to work.  As a result, Plaintiff's amendment was not a clear and convincing reason supported by substantial evidence in the record to discredit his testimony.

The lack of a clear and convincing reason to reject Plaintiff's testimony based on the amended alleged onset date is exemplified by the ALJ's selective reliance on medical and other evidence from before Plaintiff's amended alleged onset date to support her non-disability determination.  For example, on the one hand, the ALJ refused to consider Plaintiff's history of violence because it occurred before the amended alleged onset date, and there was no evidence that it continued after the amended alleged onset date.  Tr. 17.  On the other hand, the ALJ relied on medical records dated before the alleged onset date that documented Plaintiff's benzodiazepine seeking in April 2016 and work activities in early 2016 to discredit Plaintiff's symptom testimony.  Tr. 20.  The ALJ's self-serving manner of using the amended alleged onset date to consider evidence from before his amended alleged onset date that disfavored Plaintiff while rejecting other evidence from the same time period that supported his claim further demonstrates that Plaintiff's amended alleged onset date is not a clear and convincing reason to reject his testimony.

## II.  Opinion of Dr. Roman

Social security law recognizes three types of physicians:  (1) treating, (2) examining, and (3) non-examining.  *Garrison*, 759 F.3d at 1012.  Generally, more weight is given to the opinion of a treating physician than to the opinion of a physician who does not actually treat the claimant.  *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  More weight is given to the opinion of an examining physician than to a non-examining physician.  *Garrison*, 759 F.3d at 1012.

 "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  *Ryan v. Comm'r,*

528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in *Ryan*).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198).  An ALJ may not rely only on a non-examining physician's opinion, without more, to reject an examining physician's opinion.  *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).  When deciding whether to accept or reject a medical opinion, the ALJ must consider whether the source is an examining or treating physician, the length of the treating relationship and the frequency of treatment, supportability of the opinion, consistency of the opinion with the record as a whole, the specialization of the source of the opinion, and other factors.  20 C.F.R. § 404.1527(c).

The ALJ gave Dr. Roman's opinion little weight because "it was based on a one-time evaluation, and the claimant admitted that he failed to provide accurate background information."  Tr. 22-23.  The ALJ found that Plaintiff's subjective reports to Dr. Roman were "well in excess of those alleged to his treating providers."  Tr. 23.  The ALJ also rejected Dr. Roman's finding that Plaintiff is at risk of future violence because it was based on "a remote legal history of violence with no objective evidence indicating ongoing issues with violence or problems with temper control." *Id.*  Because Dr. Roman's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for rejecting her opinion that are supported by substantial evidence in the record.  *Ryan*, 528 F.3d at 1198.

A.    **Dr. Roman's One-Time Evaluation**

The number of visits Plaintiff had with Dr. Roman is not a sufficient basis to reject Dr. Roman's opinion entirely, but it is a proper consideration in determining what weight to give the

opinion. 20 C.F.R. § 404.1527(c)(i); *David B. v. Saul*, No. 2:19-cv-00095-MKD, 2019 WL 6118263, at *8 (E.D. Wash. Nov. 18, 2019) (citing 20 C.F.R. § 404.1527(c)); *Dale J. v. Comm'r*, No. 3:18-cv-05644-TLF, 2019 WL 3729674, at *2 (W.D. Wash. Aug. 7, 2019); *Eva B. v. Comm'r*, No. 2019 WL 850952, at *7 (E.D. Wash. Jan. 11, 2019) ("The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion . . . [but] the fact Dr. Moon evaluated Plaintiff one time is not a legally sufficient basis for rejecting the opinion and is inconsistent with the ALJ's decision to assign greater weight to consultants who had no treating or examining relationship with Plaintiff"); *Nelson v. Astrue*, No. 2012 WL 5987137, at *10 (D. Mont. Jul. 16, 2012) (ALJ who assigned great weight to non-examining experts' opinions erred when they assigned "very limited weight" to opinion of treating physician who examined Plaintiff only twice, even though the treating physician's observations were consistent with the record as a whole). Thus, the ALJ did not err in assigning little weight to Dr. Roman's opinion because she evaluated Plaintiff only one time.

### B. Plaintiff's Failure to Provide Accurate Background Information

The ALJ may reject an examining source's opinion that is based solely on a claimant's subjective complaints if the record supports discounting the claimant's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). However, if the ALJ erred in discounting the claimant's credibility, then the ALJ may not use the claimant's credibility as a basis to reject an examining provider's opinion. *Hogansen v. Astrue*, No. 09-6240-CL, 2011 WL 1002106, at *11 (D. Or. Jan. 27, 2011). As discussed above, the ALJ had clear and convincing reasons to reject Plaintiff's testimony but, unlike the examining physicians in *Tonapetyan*, *Fair*, and *Hogansen*, Dr. Roman's opinion was based on more than Plaintiff's subjective reports. In addition to the clinical interview, Dr. Roman

conducted subtests of the Wechsler Memory Scale, Wechsler Adult Intelligence Scale, and Woodcock-Johnson III, and she administered the Beck Anxiety Inventory and Beck Depression Inventory.  Tr. 567.  She also reviewed Plaintiff's records from the Lane County Methadone Program.  *Id*.

Most importantly, Dr. Roman knew that Plaintiff's statement to her about never using opioid pain medications was false, and she did not rely solely on Plaintiff's self-report about his drug abuse history to formulate her opinion.  In fact, she described the conflict between Plaintiff's statements and the history of opioid and heroin abuse that is documented in his records.  Tr. 569.  As a result, Plaintiff's inaccurate report to Dr. Roman about his history of drug abuse was not a clear and convincing reason for the ALJ to diminish the weight she gave to Dr. Roman's opinion.  *Tonapetyan*, 242 F.3d at 1149.

## C.  Plaintiff's Subjective Reports to Dr. Roman

Plaintiff reported to Dr. Roman that he had experienced auditory hallucinations since age twenty-nine, insomnia, depression with a history of suicide attempt, and severe anxiety, particularly when he is around other people.  Tr. 568-69.  He reported that even using medication, he hears voices in his head for a total of four hours a week.  Tr. 568.  Plaintiff reported that he had difficulty remembering to take his medication.  *Id.*  Plaintiff said that he was paranoid and did not trust people.  *Id.*  The ALJ concluded that those symptoms were "well in excess" of the symptoms that Plaintiff reported to his providers, but she did not point to any of Plaintiff's medical records to demonstrate the disparity, and her conclusion is unsupported by substantial evidence in the record.  Tr. 23.

 "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."  20 C.F.R. § 404.1527(c).  Throughout her

discussion of Dr. Roman's opinion, the ALJ cited Exhibits 5F, 6F, and 10F (Tr. 518-66, 641-44), in which Plaintiff reports symptoms to his providers that are similar to those that he described to Dr. Roman. For example, in August 2016, Plaintiff reported worsening anxiety that made functioning very difficult, and he reported anxious and fearful thoughts, difficulty concentrating, and startling easily. Tr. 518. In September 2016, Plaintiff had a crying and hyperventilating episode during a visit. Tr. 533. He also reported psychotic episodes within the context of his depression, frequent dissociation, fear of public transportation and enclosed spaces, Tr. 555, and sleep paralysis, Tr. 556. The same month, he reported anxiety, panic attacks, hyperventilation, and problems riding the bus. Tr. 641. The ALJ noted elsewhere in her decision that Plaintiff had reported his auditory hallucinations to providers in September 2016 and June 2017 (when he reported that he had experienced weekly auditory hallucinations since 2016), Tr. 21, which was consistent with his report to Dr. Roman. Dr. Roman also personally observed some of the symptoms that Plaintiff reported. Tr. 570 ("he appeared quite anxious. He wept at one point and stared at the floor . . . . At the end of the appointment he gathered his belongings quickly and left the room."). Those reports of similar symptoms to Plaintiff's treating providers, which are consistent with Plaintiff's reports to Dr. Roman, are located within the records that the ALJ relied on to find that the symptoms Plaintiff reported to Dr. Roman were "well in excess" of those he reported to his providers. Because no disparity exists between Plaintiff's reports to Dr. Roman and his treating providers, the ALJ erred in rejecting Dr. Roman's opinion on that basis.

### D.      Plaintiff's Social Limitations and Risk of Future Violence

The ALJ failed to provide clear and convincing reasons to discount Dr. Roman's opinion that Plaintiff is at risk of future violence. Dr. Roman's opinion was based on Plaintiff's reports that he had smashed a convenience store window with a collapsible baton, Tr. 570, and had spent

time in jail in January 2016 for unlawful use of a weapon, Tr. 569. Plaintiff reported that he had

a year of probation remaining for his unlawful use of a weapon conviction at the time of Dr.

Roman's assessment. *Id.* Plaintiff's records provide additional examples. In July 2015, Plaintiff

told his counselor that he had anger issues, sometimes flipped out, and felt that he was going to

hurt someone else. Tr. 288. He also reported beating up his mother's boyfriend in the past. *Id.*

Although they occurred before Plaintiff's amended alleged onset date, Plaintiff's unlawful use of

a weapon and report to his counselor that he felt that he was going to hurt someone occurred

within two years of Dr. Roman's evaluation. His history of violence, thus, was not "remote," as

the ALJ asserted, especially in light of his continued mental health difficulties. Tr. 23. As the

ALJ emphasized throughout her report, Plaintiff had received only sporadic therapy between the

time of those reports and the time of her decision, Tr. 21-22, and there is no evidence in the

record that his violent thoughts and behavior had resolved. As a result, the ALJ failed to provide

a clear and convincing reason supported by substantial evidence in the record to reject Dr.

Roman's opinion that Plaintiff was at risk of future violence.

### III. Lay Witness Testimony

Plaintiff's mother provided a third-party function report that explained that she had

observed Plaintiff's symptoms of anxiety, diminished concentration, frustration, worry, and

sadness. Tr. 247-48. She noted that he paced a lot, had trouble sleeping, had no appetite, and

required constant reminders to do chores, take medications, and attend appointments. Tr. 248-

49. The ALJ may discount a lay witness's testimony by providing germane reasons supported by

substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The

ALJ assigned partial weight to Plaintiff's mother's testimony because: (1) her reports were "not

entirely consistent with the record as a whole, including the claimant's longitudinal treatment

records and activities of daily living;" 2) "the medical evidence of record as a whole fails to establish that the claimant is incapable of sustaining simple, non-public work;" and (3) she "is not a medical source and is not qualified to assess the claimant's functional limitations." Tr. 19-20.

The ALJ's citation to "the record as a whole" is not a germane reason to reject lay witness testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)). Similarly, the fact that a lay witness is not a medical source is not a germane reason to reject lay witness testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). The fact that a person is not a medical source is precisely what makes the person a lay witness. Testimony from a non-medical source is competent evidence that the ALJ must consider unless they provide germane reasons not to consider it. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 2017).

The ALJ also rejected Plaintiff's mother's testimony because the limitations she identified were inconsistent with his daily activities and medical records. Tr. 21-22. Inconsistency of a lay witness's account of a claimant's limitations with the medical evidence and with the claimant's activities of daily living are germane reasons to reject a lay witness's testimony. *Lewis*, 236 F.3d at 511 (conflict with medical evidence) (citations omitted); *Bayliss*, 427 F.3d at 1218 (inconsistency with daily activities). Because the ALJ erred in determining that Plaintiff's alleged limitations were inconsistent with the medical evidence and his daily activities, those are not germane reasons to assign partial weight to lay witness testimony. Accordingly, the ALJ erred in discounting Plaintiff's mother's lay witness testimony.

///

///

## IV.    Credit As True

Plaintiff argues that the Court should credit as true the improperly discounted testimony of Plaintiff, Dr. Roman, and Plaintiff's mother.  However, Plaintiff failed to develop the argument, so the Court declines to consider it.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED:    March 25, 2020    .


MARCO A. HERNÁNDEZ
United States District Judge